Nott, Ch. J.,
delivered the opinion of the court:
The first of these cases is that of a naval cadet who was at home in New Orleans on leave of absence when he received an order from the Secretary of the Navy to proceed to League Island, near Philadelphia, and to report for duty on board of the U. S. S. Fish Hawk. He did so, and was subsequently ordered back to New Orleans with leave of absence until such time as was necessary for him to return to the Naval Academy.
The accounting officers allowed the cadet mileage on his return from Philadelphia to New Orleans, but instead of allowing him mileage from New Orleans to Philadelphia they allowed him only mileage for the distance from Annapolis to Philadelphia. It is clear that when the cadet had complied with both orders the situation found him just where he was before, minus so much of his vacation as had been spent *335 in the public service. That is to say, he still had to return from his home in New Orleans, at the termination of his leave of absence, to his post of duty, the Naval Academy at Annapolis, and pay his own expenses, after having lost part of his vacation and after having- paid his own expenses from New Orleans to Philadelphia when traveling under orders and on public business.
The case of Cadet Huff is similar and in legal effect identical. The claimant, at his home in Missouri, was ordered to the Norfolk Navy-Yard and subsequently ordered back to his home in Missouri. The accounting officers allowed him mileage only for the distance between Annapolis and the Norfolk Navy-Yard and for the return trip from the Norfolk Navy-Yard to his home. If the cadet’s leave of absence had not been interfered with he would have had to pay the expenses of travel twice between Annapolis and his home. As the case now stands he had to pajr for that journey three times, viz, when he went to his home, when froni his home to the Norfolk Navy-Yard, and when he finally returned from his home to Annapolis.
These disallowances were made under the decision of the Comptroller of the Treasury (Hodgson’s Appeal, Comp. Dec., Vol. III, p. 125) for computing mileage, as follows:
“The rule for computing travel allowances in such cases is that where an officer is absent on lea/ue from his station and receives an order requiring him to join a new station, he is entitled to travel allowances from the place of the receipt of the order to the new station,provided the distance is not greater than that from the old station to the new station.”
It is manifest that this is a rule which can not be upheld. The last clause, the proviso, stamps it as one which, in common phrase, does not work both ways. Congress have made but one law, that naval officers shall be allowed “ for traveling expenses when under orders ” within the United States 8 cents per mile. Acts 3d March, 1835 (4 Stat. L., 755); 16th June, 1874 (18 id., p. 72); 30th June, 1876 (19 id., p. 65). The above-quoted rule in effect makes a new enactment of law as regards officers on leave of absence, and the proviso makes this rule operate by two different methods and always adversely to the officer, although the statute contains no proviso or qualifica *336 tion which will prevent its operation from being uniform in all cases.
If two cadets had left Annapolis on the same day, at their own request, with leaves of absence, and one had gone to Augusta, Me., and the other to New Orleans, and both, while on leave of absence at their homes, had been ordered to Galveston, Tex., the one would have been allowed mileage only from Annapolis to Galveston and would have been refused mileage from Augusta to Galveston; the other would have been allowed mileage from New Orleans to Galveston and would have been refused mileage from Annapolis to Galveston. Here one law would have been applied to one cadet and another law would have been applied to the other cadet. Both being absent on leave, it would have been said to the one, “The rule refuses you mileage from your home to the place to which you were ordered;” to the other it would have been said, “The rule allows you mileage only from your home to the place to which you were ordered.” -That is to say, if the former of these cadets, the one who was ordered from New Orleans to Philadelphia, and who received therefor only mileage from Philadelphia to Annapolis, had been ordered from New Orleans to Galveston, he would not have been allowed mileage from Annapolis to Galveston, but only mileage from New Orleans to Galveston.
It is manifest that such variations of application can not be sustained under any judicial principle. It comes to this: That if an officer whose home is to the west of his post should be ordered west, the law will operate in one way; if he should be ordered east, the law will operate in another waj^. Such an application of the law surely never was intended by the legislative power.
Nevertheless, there is a principle which has long been recognized both by the accounting officers, the departments, and the courts, which is, that the expiration of a leave of absence finds the officer, in legal contemplation, at bis post. It necessitates a hard rule, viz, that where an officer’s prescribed leave of absence is shortened, perhaps practically destroyed, he likewise loses his traveling expenses, if the public exigency requires his return to duty. The court understands the principle to be too well established to be disregarded or *337 changed. An officei' takes Ms leave of absence at his own risk; it is not granted for the benefit of the Government; if the Government wants his services before his leave expires it must have them, and the officer who takes the risk of that must bear the loss of his personal traveling expenses.
It is not the intention of the court to question the general principle or impair its operation. But when an officer is obliged to forego what has been granted him, his leave of absence, and return to his post, and bear the expenses of the journey, it is his right to exercise his own discretion and to travel by the most direct route. His superior officers may otherwise order, but that change, which is for the public welfare, must not be effected at his cost. Moreover, in these two cases the orders of the Navy Department were imperative that each cadet should return to his home. What is called leave of absence in these cases was really a vacation — the usual summer vacation of young men at college — and the absence of students saved the Government the expense of keeping up the establishment at Annapolis. The orders left the cadets without discretion; they were orders which they had to obey; and under such orders it can not be said that they should be compelled to obey at their own cost and charges.
The judgment of the court is that the claimant John J. Fitzpatrick recover judgment in the sum of $92.64 and that Charles P. Huff recover judgment in the sum of $87.52. •